Our next case for argument is United States v. Subhanah Wahhaj. It is docket 23-2171. Counsel, please proceed when you're ready. May it please the court. Good morning, your honors. My name is Gregory Ack and I represent Ms. Subhanah Wahhaj, who is currently serving a life sentence for kidnapping, conspiracy to kidnap in this case. I've been listening to the analogies the court's been discussing here. I've come today with analogy that I've been working with in my mind and I've been thinking about, we've been talking about the unlawful, that that element, that the seizure, the taking, the vaguely must be unlawful. But there's also that phrase there at the end, except in the case of a parent thereof, right? And the court's familiar with my arguments on that about, we're not talking about exempting, we're not talking about exempting persons, we're talking about the situation, which I think is consistent with Chatwin. Chatwin was concerned about the language, concerned about the, this law, the Federal Kidnapping Act, worried as Judge, your Honor, Judge Phillips and your Honor, Judge McHugh recently in the Murphy case, I think it was, talked about Chatwin and this, this concern about this criminal liability could be extended or lost in infinity. And in particular, you know, in cases where that's really what we're talking about is a domestic dispute. And but Chatwin's, I think what Chatwin's trying to admonish us is that when we're addressing these questions, we should be thinking, are we talking about a true kidnapping? And that's what I think is the purpose of that language, except in the case of a child taken by the parent thereof, that the purpose of that is to distinguish these kinds of domestic relation cases from true kidnappings. The analogy I have in mind is, let's say that I live in Kansas City, Missouri. My buddy next door, we carpool to church every week. Church is a couple miles across the border into Kansas City, Kansas. My buddy's wife is not a member of our church. She doesn't approve of it. They have a five-year-old son. She's very against him going to church with him. But on one Sunday, one particular Sunday, she's out of town. She doesn't know. I'm aware that, you know, that she's against it. But that's between him and her. And he wants to bring his son along. So we go to church. And unfortunately, coming back from church, we have an accident. The child is killed. And according to the government's understanding of this statute, that makes me criminally culpable, gives me the kind of evil mind that makes me worthy of a mandatory life sentence. And I think that's the purpose of this, except in the case of a child taken by the parent. That's the work that does there. We're not talking about this kind of a situation. Well, Murphy was kind of looking at the duration, right? The holding, right, yeah. And in your example, you wouldn't meet that duration, would you? I mean, took him to church. Right. I mean, I don't think it's not so much from that case. I don't know if I understood the court's question. I mean, we're not talking about duration of holding in this case. And in my analogy either, really. The case we're dealing with, they clearly need the duration of holding. Wouldn't you agree? Yeah, the timeline. I think so. I might have to think through that a little bit more, because it makes me think of the more recent case, or maybe it was, I guess it was a Mobley case where we're comparing this to the International Parental Kidnapping Act. And there was something in there about how, well, the kid was already there. And so we have a situation here also. It's like, well, the kid is already taken, or he violated the law, but they're already in New Mexico. So, but I don't know if that answers your question or not, Your Honor. Well, I guess now I'm confused on whether you would agree that in the facts of this case, the time that they held the child would be sufficient if the other elements of kidnapping were met. If this were a kidnapping, Your Honor, it would not be an issue whether or not there was sufficient time of the holding. Correct. Yes, Your Honor. I think what you're arguing to us today is that if it's the parent who does the kidnapping, that anyone who assists the parent gets the benefit of the parental exception. Is that what I'm hearing you argue today? Well, two things. I wouldn't call it a parental exception. I'd call it a case exception. And two, I would say yes, but benefit sounds like you're giving them some kind of, oh, by the grace of, you know, our good grace that you get this benefit. Or I would say it's not kidnapping. And it's not like a technicality. This is not a true kidnapping, and that's what I think we've got to keep going back to. What if the parent who takes the child and is aided by these other people, their parental rights have been terminated? Now, if your parental rights have been terminated, you may not have the unlawful element, but I still say it's still in the case of a child taken by the parent. I'm sorry, that's in the statute itself. That's in the statute itself. If the parental rights have been taken, then that's not a parent under the statute. Okay, say there's a court order then. Now, that then, I would say that it still applies, because the statute specifically carves out the termination. Well, it's unlawful, but it's accepted from prosecution. Is that right or no? Oh, I would say that the unlawful element, I could see that if there was a court order in place at the time of the taking, then that, I could see, would be an unlawful taking. But we'd still have to deal with in the case of a child taken by the parent. But I could see the unlawful could be dealt with. If we disagree with you in the case, then the other defendants could be responsible for the kidnapping. Could you repeat that question? If we disagree with your interpretation of in the case of. Right. Then the other defendants, apart from the father, could be responsible under the kidnapping statute. If there were a court order. If there were a court order, yeah, I believe so.  Because, again, I mean, it's just the, yeah, but, well, I mean, there's so much more to say, though. Just looking at those two issues may be so, but there's so much more to say about criminal intent, for example. And I think that's, that's, that's that lost in infinity thing again that the, that Chapman was warning us against. Was this your specific intent argument that they had to know that it was unlawful? Let me put it this way. The analogy I was thinking about this morning is, like, you have to know. And I'm not, I'm really more focused on general intent. I know their specific intent of the statute is just take, is a jurisdictional issue in this particular case of just taking across state lines. You'd specifically have to intend that. But you're still left with criminal intent. Right? It's like, if you're going to rob a bank, you have to be aware of the facts that make it robbing a bank and not just the fact that you walked out of a bank with some money in your hands. It's got to be the facts that make it criminally punished. That it has to be the acts that are the evil that Congress sought to prevent. And in a case, so that's why if these individuals didn't know that there was any lack of, if they didn't know that there was anything wrong with him taking, then they lacked that criminal intent. So the brother doesn't know that there's a court order in place. Right. That gives the mother sole custody, and so he helps his brother take the child, and they take the child across state lines. You're saying in that instance, because the brother didn't know about the court order, that the brother would not be liable of kidnapping. I think, yeah, that's right. But I do see the court's point. I think that if you have a situation where other people are aware of the unlawful, in fact, I think that's pretty straightforward. If the other people, if the brothers and sisters and the like are aware that he's actually violating a law, then you at least, in taking the child away from the mother, then you could, I guess, at least in terms of the mens rea question, you would satisfy that. I'm still not so sure. I still think you would still, they would still have a defense, though, about that this is the case of a child taken by the parent thereof. You may be able to get past the unlawfulness part of it, but you're still stuck with it. This is not a true kidnapping, and that in the case of the child, the child taken by the parent thereof, that's supposed to separate out these domestic relations kinds of cases. I'm going to quickly touch on something else, and then I'll reserve the rest of my time. But it's this, I mean, my client was convicted of actually kidnapping this child, and I think that it has to be a matter of aiding and abetting. And I'm sorry, but it makes no sense to me, and I've never heard of such a thing as one-sided aiding and abetting, where I can help somebody do something that's legal for them to do, but it'd be illegal for me to do it. And I'm not doing it, I'm just, like, supporting it in some way. I used the analogy in my brief about immigration policy. I'm not going to enter the country, but I'm going to help my brother. He can enter, and so did I aid and abet, because it's illegal for me to do it, and I helped him do it, and it was legal for him to do it? To me, that's absurd. They can't be aiding and abetting. You can aid and abet a legal act, right? It's just not a crime. Right, yeah, I mean, you can aid, yeah, okay, aiding and abetting, but yeah, that doesn't make it a crime. The same thing with the conscription. I'm having a little trouble understanding what you're arguing. You're saying that because the person that Subhana was aiding and abetting had a legal right to take his own child, that she can't have aided and abetted a kidnapping. Right. That's correct, because it's not kidnapping. It's not illegal. More of the focus of the argument is that it wasn't illegal, so you can't aid and abet a legal thing and have it be a crime. Does it matter that his parental status is an affirmative defense to kidnapping? Okay, it's not an affirmative. Again, that buys into the theory that it's an exemption of the person, and I'm saying it's an exemption of the case, the scenario. And the same thing, I'll just say the same thing's true for conspiracy. Under this theory of conspiracy, you could have a conspiracy of one, which, again, is an absurdity, and I think that's why Congress said we aren't talking about these kinds of cases. We're talking about true kidnappings. I would like to reserve the remainder of my time. Yes. Good morning. Tiffany Walters again for the United States. I suppose I will turn first to the parental exception, unless the Court would prefer me to address something else. The parental exception, by its own terms, does not extend to non-parents. The language of in the case of does not, it's a generic term, it does not bear the weight that Zupana gives us, and it is contradicted by the positive law, which has commas around in the case of the minor. Is it at least ambiguous? I don't think it's ambiguous because it doesn't say anything about any of the other people who might assist or help a parent, and, in fact, the statute in another section exempts from a heightened punishment a whole number of family members. If Congress wanted to make the parental exception broader than what it was, it could have said so, and it didn't do so. And I'd also point the Court to two cases, the Miller case and the Sheet case, both of which contradict defendants' position on this. In both of those cases, you have one parent who is found to benefit from the parental exception, and then the spouse of that parent who is a non-parent is found, to be liable despite the parental exception. So I think that that parental exception is limited solely to Suraj and cannot be extended beyond that. Is the parental exception an affirmative defense? Yes. And does that matter in terms of whether you can aid and abet or conspire? It does. It means that Suraj still violated the statute. He just has a defense, and so other co-defendants could aid and abet or conspire with Suraj and still be liable for that, even though he has an immunity from prosecution due to his parental status. That being said, I'd point out that the Court doesn't even need to go there because defendants also conspired amongst themselves, and Jamie, who is not before the Court in this case, but pled out before this. So there's plenty of defendants there to have the agreement for the conspiracy, and I don't think that is an issue. Can I take you back to something you said about 1201 and specifically subsection G, which has this list of family names? And I think you're tying that to the parental exceptions in some fashion to say it doesn't include other people, only the parent. But these listed people is not a parent, grandparent, brother, sister, aunt, uncle, or a person having legal custody. The only thing that that subsection says is that you're not subject to the 20-year mandatory minimum. Correct. Does it say that you're not subject to prosecution?  Okay. No, it does not. And I cite that only for the proposition that Congress was specific when it wanted to be specific, and in the parental exception, it only says that it's exempting a kidnapping in the case of a minor by parent thereof. So. And what about the argument that they have to know that it's illegal in order for them to have the necessary intent, the mens rea, to violate the kidnapping or the conspiracy to kidnap statute? So I'd like to distinguish between knowledge that it violates a statute versus knowledge that it's unlawful, and I think that this Court's case is distinguished between those two. I don't think there's any requirement for the defendants to know that this violates Section 1201 or it violates some section of Georgia law. What is required is that they have to know that it's unlawful, and in this case, the unlawfulness is determined by the lack of consent of Hakama. So it was required for defendants to know that Hakama didn't consent, and the evidence of that was overwhelming. And if we were to disagree with you that it becomes unlawful just because one spouse who has equal rights to the child doesn't consent, then there wouldn't be knowledge here, right? If the Court holds that the consent of one parent makes it lawful, then I think if it's lawful, then they would lack that knowledge, but the lawfulness would also be kind of a more fundamental problem. So I don't know if the Court wants me to address the specific intent arguments. It seems like Supana is moving on from those. You have ten minutes. Okay. Address what you'd like. So as to specific intent, I think Jackson forecloses the argument that it requires specific knowledge that it violates a law. Jackson dealt with A5, but both A1 and A5 share the same subparagraph A, and this Court held that only general intent was required for that. And as to A1, it requires willfulness, but the district court instructed on willfulness, and I don't think that that was sufficient, and Supana has not shown any error in that instruction. Going back to the question of unlawfulness, I think Supana cites a few state cases that I'd like to address. Supana argues that the New Mexico statute is not violated if the detaining, concealing, or enticing occurs in New Mexico, but the taking doesn't. It's based on a subparagraph J of that statute. I think the New Mexico courts have rejected that, and I'd point the court to State v. Sung 999 Pacific 2nd 430 as to that, which interpreted subsection J to include that whole list of verbs. So if the detaining, the concealing, any of that happens in the state of New Mexico, that's a violation of New Mexico law. And that shows that this was, in fact, a violation of New Mexico law, which does not require a custody order. I think... Back it up and walk us through the statute so that I can follow you. Sure, let me actually get the language in front of me. So I think Supana is raising a number of arguments about the statute, and one is regarding subparagraph J. Subparagraph J says, violation of the provisions of this section is punishable in New Mexico whether the intent to commit the offense is formed within or outside the state if the child wasn't present in New Mexico at the time of the taking. And so Supana is interpreting that to mean that the child has to be taken within New Mexico, and because Abdul Ghani was taken in Georgia, that this doesn't apply. But the court in the Sung case I cited found that that reference to taking actually is a general reference to all the verbs listed in B, which includes taking, detaining, concealing, enticing away, or failing to return the child without good cause. And so because of that, this could be prosecuted in New Mexico as custodial interference. So it's kind of a continuing violation. It is. The fact that the taking occurred in Georgia does not prevent the prosecution under custodial interference in New Mexico because the holding, the detaining and concealing and failing to return that child occurred in New Mexico. All right. So the kidnap under that we would be looking at from the moment they entered New Mexico. That's when the kidnapping would start. Well, this is a custodial interference. But, yes, it would be a violation of the custodial interference. Or the New Mexico could prosecute a violation of custodial interference once he's being held and concealed in New Mexico. A violation based on what? Do we get past the both parents consent thing or are we still stuck there? I don't think we – I mean, I think there, the New Mexico statute definitely covers a situation where there is no custody order. I'd like to go to the language of B. So it's custodial interference consists of any person having a right to custody of the child. Suraj had a right to custody of the child. Maliciously taking, detaining, concealing or enticing away or failing to return that child without good cause and with the intent to deprive permanently or for a retracted time another person also having a right to custody. So in that situation, Hakim and Suraj both have a right to custody. But it is unlawful under New Mexico law for Suraj to take Abdul Ghani from Hakim with the intent to deprive her of custody. But he didn't take her in New Mexico. I mean, he didn't take the child in New Mexico. He didn't, but I think the Sung case addresses that concern. So because he concealed and detained here, that's also covered by New Mexico law. So once he crossed the line in New Mexico, we have it? It's unlawful. It's unlawful, yes. The holding him here is unlawful. How does that relate to the other defendants? Well, I think the question is whether or not the taking is unlawful. And if the taking is unlawful, then that element is satisfied. And then we move to the question of whether the parental exception covers any defendants. The statute says an unlawful seizure, which sounds to me like they're looking at when you first seized the child, which I think would be Judge Moritz's, we're looking at Georgia. And I think the law in Georgia is pretty clear that without a court order telling a parent, you know, they're still married, there's no divorce, they each have equal rights, that you don't yet have an unlawful seizure. I'd like to push back slightly on the seizure piece, because if you look to the language of 1201, the language covers unlawfully seizing, confining, which is what happened in New Mexico, and baggling, decoying, kidnaps and abducts or carries away. So definitely the confining at the least, and then the holding both occur in New Mexico. So I think the court, if it feels the need to look to state law, could look to both the state law of Georgia or New Mexico. But I'm looking at the federal kidnapping statute.  Which requires an unlawful seizure. It requires unlawful seizures, confines, and bagels, decoys. And while the seizure may have occurred in Georgia, the confining occurred in New Mexico. And I think the confining in New Mexico was unlawful under New Mexico law. At least as to the custodial interference. If we look to the New Mexico kidnapping statute, it could also be unlawful there. There is no parental exception under the kidnapping statute in New Mexico. Could you please give me the citations again, and I know you did. I know I did. I'm sorry. I have a lot of cases here. And if you can't pull it right up, we can find it later. Or you can tell us in one of your next arguments. Okay. Yes. Marquez. State v. Marquez. It's an unpublished case. So the citation is 2012 Westlaw 1252956. And the statute? The statute is the New Mexico kidnapping statute, which is 30-4-1. Okay. And then I'd also point to, again, Rios v. Raydel, which dealt with a situation where there was no custody order regarding New Mexico custodial interference. All right. So just to circle back and rewind, what you're saying is that you now have shown us a statute and a case applying that statute that says it was unlawful for the father to confine, apart from another parent who had an equal right, a child in New Mexico. Correct. And therefore, then you track over to 1201 and you say, whoever unlawfully confines and holds a person, da-da-da-da. And so that first part of the statute, the unlawful part, is loaded up. And then the second part of the statute is the parental exception. So that's why he's not charged. But the rest of them fit under that. And unless the parental exception gets them off too, then their convictions stand. Is that your position? Correct. And just to briefly respond to Supana's position regarding the Sheik case with the parental exception, the termination of parental rights was an exception that was only added in 1993, which is the year Sheik was decided. So I don't think that has anything to say one way or the other about that. And help me because I'm getting confused with all the different defendants. Did Supana have a Faretta claim? No. Okay. I guess one other case, since I have a few minutes left on unlawfulness, Supana cites the Lozier case out of the Eighth Circuit. That was a bounty hunter case. I think that goes back to whether or not the unlawfulness, there's situations in which an individual can be taken against their consent where it's still lawful. And I think that shows the work that unlawfulness does in that situation and the role defenses have to play. Defenses are justifications. So if you have a lawful arrest with probable cause, that's not an unlawful seizure. So I don't think that that is the only case that they have cited in which there was a predicate offense charge as part of kidnapping. This court has never required it. The pattern jury instructions don't require a pattern offense. And the unlawfulness really goes back to Chatwin's against the consent. And that against the consent of Hakama cannot be negated or extinguished by the consent of Siraj. Okay. We're getting some cases batted around that aren't in the briefs. Is this line of reasoning that you're talking about, I don't remember it in the briefs, was it? The Lozier case? Yeah. The Lozier case is in Supana's reply brief. Okay. And the New Mexico statute that we're concerned about here, the kidnapping that you're, everything that you just said, this is why it's unlawful. Is that argument made? Yes. Yes, there's an argument as to New Mexico custodial interference. Although the question about the subparagraph J is in response to an argument made by Supana in her reply brief. And so that's, I'm raising that in response to that. Subparagraph J, I'm sorry, of the New Mexico? Of the custodial interference statute. Supana makes a couple other arguments about that case. One is that the taking was not malicious until some point in time. But it was malicious as to Joaquim from the moment he was taken. I don't think there's any debate as to that. What does malicious mean in that context? It means malicious harm to the person who's holding custody. So the maliciousness is toward the other parent, not toward the child? Correct. Correct. And then the other issue I think that he's raising as to the statute is that the intent to provide Rukia could have been sort of for the child's benefit, which I think goes to one of the questions that Judge Moritz raised earlier. And in New Mexico, if you were doing something like that for the child's benefit, it has to be objectively reasonable. And under these facts, it was not objectively reasonable to deprive him of his medication and subject him to Rukia for his benefit, even if Suraj believed that. So for those... Back to your... I'm still thinking about the statute and whether you would be able to... Doesn't the statute anticipate that the transporting across state lines occurs after there's the unlawful... In this case, we're saying confinement now versus seizure, but doesn't there need to be the unlawful confinement and then the transporting across state lines? I'm not aware of any... Because what you're saying is there was no unlawful confinement until they transported him over the state line, and that was the final transport. If this Court were to define unlawfulness by reference to state statute and only find it unlawful under New Mexico, then I suppose it would become unlawful in New Mexico... It wouldn't be until after they crossed over the state line. I mean, I think... I think the concepts have to go together, don't they, the transporting and the lawfulness? They do, but I think, again... In this case, we're talking about confining now. Right. It's the same, because the confining occurred after the seizure. I think that the unlawfulness, I mean, with the intent to bring him to New Mexico and confine him there, I suppose we're, like, splitting hairs as to the timing. I don't know if it is a splitting of hairs since, you know, I think the Georgia statute also renders it unlawful, and so it would be unlawful under both of those statutes, and so it's unlawful from the time he goes out of Georgia. That's when it becomes a state... a federal crime. That's the moment... Well, in Georgia makes it unlawful. Yeah. Not the same. I mean, you're talking about the custody... the difference between, you know, the... I forget what the name of it... I thought you said Georgia didn't have anything similar to what New Mexico has in terms of this custody violation. It has a custodial interference statute, and it prohibits taking the child without lawful authority. That doesn't refer to the custody order. There are cases referring to the custody order, like Brasel, but I think those cases are distinguishable because they don't deal with this sort of a situation, and they deal with just the interpretation of a custody agreement. So I think there might be questions as to whether it's unlawful to violate a custody order by two days, but I don't think there's a lot of disagreement as to whether it's unlawful to permanently take a child from his mother who has a right to lawful custody over them. And again, I'd point to the arrest warrant in Georgia. What is the answer to Judge McHugh's question, which is what are you relying on in Georgia that you say corresponds to New Mexico? I think the custodial interference statute, which is... 16-545-6. Correct. Correct. Okay. If there are no further questions... Thank you, counsel. Thank you. Counsel, I understand your position on in case of under 1201, but if you can, if you're prepared for it, can you respond to what we just heard there, the case for unlawfulness? Yes, about the New Mexico statutes. Yes, absolutely, Your Honor. I was quoting in my brief out of the statutes themselves the custodial interference, which can provide for a scenario where you have somebody who has that right, taking it from somebody else, custody right taken from somebody else, in violation of that. Maybe I misheard, but I thought that counsel was speaking to a situation where neither party had a court order. Each has an equal right. And that's possible under this statute. However, it still applies if the child was present in New Mexico at the time of the taking. That's the words right out of 30-4-4J. But I believe the argument was that there's been case law to interpret that, that it doesn't just have to be the original taking, it also can be the holding. Okay, and so when it comes to the restraining, which is also the language in the kidnapping statute also, we're talking, as Judge Morse was alluding to here a minute ago, now we're talking about violations of a state law. We're now talking about did they violate this state law, not did they violate this federal law, because there's no longer any federal jurisdiction. You're talking about something that didn't get violated until they were here confining them. There's also the issue of due process. At what point in time did these other individuals know that there was anything illegal about this? When were they served with any kind of paper that would tell them? Again, we're going back to mens rea as well as due process, as where there's some criminal intent that now has my client serving a life sentence. And then also, they were not provided a jury instruction. Unlawfulness is an element. Yeah, the jury instruction said it's unlawful if mom doesn't allow it. Right, and if it's actually unlawful because it violated a state statute, then you have to have the jury decide, well, was that state statute really violated? Because in this case, it requires maliciousness in that interference, that custodial interference. That requires maliciousness. He had a defense that he could have litigated saying, I took it because that kid was possessed and we needed to perform rookies and mom wouldn't let us do it and I had to take it away so that we could get this done for the benefit of the child. And that's not maliciousness. And maybe that would fly. Maybe that wouldn't fly. But this jury was never asked to answer that question. So you couldn't establish that element of unlawfulness because the jury was never asked to establish whether or not it was unlawful. That's what I have, Your Honor. Thank you. Unless there's any other questions. Are there questions? All right. Thank you, counsel. Case is submitted. Counsel are excused. Thank you for your arguments.